# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 07-CV-5037 (JFB)

IN RE: ANNETTE P. DURAND,

Debtor.

GEORGE A. DURAND,

Appellant,

VERSUS

NEIL H. ACKERMAN,

Appellee.

MEMORANDUM AND ORDER
September 16, 2008

JOSEPH F. BIANCO, District Judge:

The instant case is an appeal from the voluntary bankruptcy proceeding of Debtor Annette P. Durand ("A. Durand" or "Debtor") and her husband George A. Durand ("G. Durand" or "Appellant"), pursuant to Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court"). This appeal arises out of the action of Trustee Neil H. Ackerman ("Trustee" or "Appellee") to avoid the transfer of property from the Debtor to Appellant as either a fraudulent conveyance or as an unauthorized post-petition property transfer.

Appellant G. Durand, proceeding *pro se*, appeals from two judgments of the Honorable Joel B. Rosenthal, United States Bankruptcy Judge, granting Trustee's motion for a default judgment ("Judgment I") and motion for sanctions, specifically attorney's fees and costs ("Judgment II") (collectively, the "Judgments"), and from an order denying G. Durand's Motion for Reconsideration (the "Reconsideration Order"). The Judgments were issued by the Bankruptcy Court under Fed. R. Bankr. P. 7037 and Fed. R. Civ. P. 37. The record demonstrates that Appellant: (1) filed a timely answer, but failed to appear at the initial pre-trial conference; (2) failed to appear at his deposition pursuant to Trustee's Notice of Deposition based upon Appellant's numerous objections to the timing and conditions of the deposition; and (3) failed to appear at the Order to Show Cause hearing on Trustee's default/sanctions motion, but filed a

written opposition. In his opposition to the default/sanctions motion, Appellant explained to the Bankruptcy Court that he did not appear at the deposition pursuant to Trustee's Notice because he believed that the terms and conditions of the deposition were onerous and unfair and requested Court intervention. After the default/sanctions motion was granted, Appellant moved for reconsideration on the Judgments and appeared at a hearing regarding such motion. The Bankruptcy Court denied the motion, holding that "[G.] Durand has shown a blatant disregard for the applicable discovery rules ultimately leading to the entry of a default judgment and the imposition of sanctions." The Bankruptcy Court concluded that "[t]he Motion [for Reconsideration] fails to allege any newly discovered evidence, any manifest error of law, or any significant change in the law that would affect the prior outcome."

G. Durand appeals from the Judgments and the Reconsideration Order on the following grounds: (1) the Bankruptcy Court's striking Appellant's answer and entering a judgment of default under Fed. R. Bankr. P. 7037 and Fed R. Civ. P. 37 was an abuse of discretion; and (2) the Bankruptcy Court's denial of Appellant's Motion for Reconsideration was an abuse of discretion.

As set forth below, because there is no indication in the record that the Bankruptcy Court considered the various factors articulated by the Second Circuit for Rule 37 sanctions, including the availability of lesser sanctions other than the harsh remedy of dismissal or default, the Court vacates the Judgments as to G. Durand and remands this case to the Bankruptcy Court for consideration of these factors.

I. BACKGROUND

A. The Bankruptcy Proceeding[1]

On April 1, 2005 (the "Filing Date"), Debtor commenced a bankruptcy proceeding by filing a Chapter 7 petition with the Bankruptcy Court. (Compl. ¶ 4.) Appellee was appointed the acting bankruptcy trustee in the Debtor's Chapter 7 case. (*Id.* ¶ 5.)

As of the Filing Date, the Debtor owned property located at 7 Howard Avenue, Freeport, New York, 11520 (the "Freeport Property") as tenants by the entirety with her husband, G. Durand, who was not in bankruptcy. (*See* Petition, Appellee's Exh. B.) Upon the Debtor's filing of her bankruptcy petition, the Debtor's interest in the Freeport Property automatically became property of the Bankruptcy Estate under Section 541 of the Bankruptcy Code,[2] to be sold and administered for benefit of the Debtor's creditors by the Trustee (in accordance with Trustee's responsibilities under Bankruptcy Code Section 704 and other provisions of the Bankruptcy Code).

At the Debtor's Section 341 examination (the "341 Hearing"), the Debtor testified under oath that she owned and lived in the Freeport Property for many years, and continued to live in the Freeport Property as

---

[1] The undisputed facts of the bankruptcy proceeding are taken from the Trustee's Complaint, unless otherwise indicated.

[2] According to Section 541(a)(1) of the Bankruptcy Code, a bankruptcy estate includes "all legal or equitable interests of the debtor in property" as of the creation of the bankruptcy estate "[e]xcept as provided in subsections (b) and (c)(2)." 11 U.S.C. § 541.

2

of the Filing Date and the date of the 341 Hearing. (Compl. ¶ 16.) However, she purported to have executed a deed (the "Alleged Deed") allegedly transferring her entire interest in the Freeport Property to Appellant within one year before the April 1, 2005 Filing Date "because of all [her] debt" and "for no legal consideration." (*Id.* ¶ 18.) Trustee received a copy of the Alleged Deed dated October 13, 2004, which indicated that the Freeport Property was transferred from A. Durand to G. Durand for $10.00 within one year before the Filing Date. (*Id.* ¶ 17.) This transfer was made at a time when the Debtor owed money to many creditors which she could not pay, was being sued by at least three creditors, and was insolvent. (*Id.* ¶¶ 9-12.) The Trustee claims that such a transfer could be avoided by the Trustee as either a fraudulent conveyance[3] or as an unauthorized post-petition property transfer.[4] (*Id.* ¶ 30, 32.)

B. The Trustee's Adversary Proceeding

On March 28, 2007, the Trustee commenced an adversary proceeding against both the Debtor and Appellant pursuant to various sections of the Bankruptcy Code and N.Y. Debtor and Creditor Law, seeking – *inter alia* – the avoidance of the alleged transfer of property and authorization to sell both the Debtor's and Appellant's non-Debtor interest. (*See* Compl., Appellee's Exh. D.) The following procedural events formed the basis for the Bankruptcy Court's Judgments and Reconsideration Order.

1. The Pre-Trial Conference

On March 29, 2007, the Bankruptcy Court issued a Summons and a Notice of a Pre-Trial

---

[3] Section 548(a)(1) of the Bankruptcy Code provides: "The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business." 11 U.S.C. § 548.

Similarly, Section 273 of N.Y. Debtor and Creditor Law states, "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. Debtor and Creditor Law § 273.

[4] Section 549(a) of the Bankruptcy Code provides that (with exceptions not relevant here), "the trustee may avoid a transfer of property of the estate (1) that occurs after the commencement of the case and (2) (A) that is authorized only under section 303 (f) or 542(c) of [the Bankruptcy Code]; or (B) that is not authorized under this title or by the court." Trustee's review of the land records of Nassau County showed that the Alleged Deed was not recorded with the Nassau County Clerk's Office until November 14, 2005, more than seven months after the Filing Date and more than one year after the Alleged Deed Date.

3

Conference ("Notice") to be held on May 9, 2007. (*See* Bankr. Docket # 2.) The Trustee served both the Debtor and Appellant on April 4, 2007 with the Summons, Complaint, and Notice.[5] An Affidavit of Service was filed with the Court. (*See* Aff. of Service, Appellee's Exh. F.) The Debtor never filed an answer or responded to the Summons and Complaint in this adversary proceeding, but the Appellant filed an answer on March 6, 2006. (Answer, Appellee's Exh. G.) Although Appellant filed an answer, Appellant failed to appear at the pretrial conference held before the Bankruptcy Court on May 9, 2007. Appellant never contacted the Appellee or the Bankruptcy Court prior to his non-appearance at the pre-trial conference. It does not appear from the record that any action was taken by the Bankruptcy Court based on the failure of Appellant to appear; rather, it appears that the Bankruptcy Court simply issued a discovery scheduling order described below.

2. The Deposition

The Bankruptcy Judge issued a Pre-Trial Order (the "PTO") on May 10, 2007, setting a discovery schedule and outlining the discovery rules. (*See* PTO, Appellee's Exh. F.) The PTO specifically stated that:

> Failure to strictly comply with all of the provisions of this order may result in the automatic entry of a dismissal or a default as the circumstances warrant in accordance with Fed. R. Civ. P. 16, made applicable to this proceeding by Fed. R. Bankr. P. 7016.

(*Id.*) The PTO was served by mail by the Bankruptcy Court on both the Debtor and on the Appellant. (*See id.*)

On June 19, 2007, the Trustee served a notice to take a deposition of Appellant (the "Deposition Notice"). (*See* Dep. Notice, Appellee's Exh. H.) An Affidavit of Service was filed with the court with respect to the Deposition Notice. (*See* Aff. of Service, Appellee's Exh. H.) Appellant failed to appear for his scheduled deposition on July 12, 2007. Appellant's non-appearance was noted on the record. (*See* Dep. Tr., Appellee's Exh. I, at 4.)

Trustee's counsel wrote a letter to Appellant confirming his failure to appear and requesting that Appellant contact Trustee's counsel by August 3, 2007 to reschedule the deposition. (*See* Trustee's Letter, dated July 26, 2007, Appellee's Exh. J.) Appellant never responded to such request.

3. The Default/Sanctions Motion

On August 20, 2007, the Trustee filed a Motion for Default Judgment against the Debtor (Annette Durand) and a Motion for Sanctions against Appellant (George Durand), by way of an Order to Show Cause. (*See* Default/Sanctions Motion, Appellee's Exh. K.) On August 22, 2007, the Bankruptcy Court issued an Order Scheduling Hearing (the "OSH"):

> - directing and compelling Defendant George Durand to show cause at an expedited hearing herein why he should

---
[5] Appellee served the Debtor at a North Carolina address (later found through a Westlaw research search) and at the Freeport Property address. Appellee served the Appellant at the Freeport Property address.

not be sanctioned for his intentional and unexcused failure to comply with the Trustee's/Plaintiff's Notice to take his deposition, by way of (A) striking George Durand's answer to Plaintiff's complaint herein and (B) holding him liable to pay Plaintiff's professionals' fees, costs and expenses for preparing, filing and serving, and appearing at the hearing on the Plaintiff's Motion and this Order to Show Cause, as well as for preparing an Order memorializing this Court's ruling, after the Motion is heard

(OSH, Appellee's Exh. L, at 1.)[6] The OSH required the Trustee to serve the OSH, the Default/Sanctions Motion, and all exhibits "on or before August 30, 2007 by regular mail upon the pro se defendant, Annette Durand at her last known address as reflected on the Debtor's bankruptcy petition, 7 Howard Avenue, Freeport, New York 11520, and at 1419 Lambs Grove Road, Elizabeth City, North Carolina 17909; pro se defendant George Durand at 7 Howard Avenue, Freeport, New York 11520." (*Id.* at 2.) Moreover, the OSH expressly stated that "[o]bjections to the Motion shall only be considered by this Court if the objectants appear at the above-scheduled hearing, AND if on or before 12:00 noon on September 13, 2007" any subject objections were served on the Trustee and filed with the Bankruptcy Court. (*Id.* at 2-3.) The OSH set an Order to Show Cause hearing for September 21, 2007 (the "OTSC Hearing"). (*Id.*)

The OSH was served by the Trustee by regular mail on August 23, 2007, and an Affidavit of Service was filed with the Bankruptcy Court. (*See* Aff. of Service, Appellant's Exh. L.) Appellant filed a response in opposition to the Default/Sanctions Motion on September 4, 2007. (*See* Bank. Docket #9; Response to Default/Sanctions Motion, Appellant's Exh. C.) In his opposition, Appellant explained that he did not attend the deposition because he objected to what he perceived to be the unilateral imposition of conditions by the Trustee in connection with the deposition notice. (*Id.*) Appellant also noted that he objected to the Order to Show Cause filed by Trustee, which required him not only to respond in writing, but also attend the conference in person in connection with Trustee's motion. (*Id.*)

The OTSC Hearing was held on September 21, 2007. Although Appellant opposed the default/sanction motion in writing as discussed above, Appellant failed to appear at that hearing. The Bankruptcy Court granted the Trustee's Default/Sanctions Motion on the record, striking Appellant's answer and holding appellant liable to pay Trustee's professional fees, costs and expenses for preparing, filing, and serving the motion, and also for appearing at the hearing. A judgment of default was issued September 26, 2007 ("Judgment I").

On October 3, 2007, the Trustee filed an affidavit with exhibits in support of his motion for costs and attorney's fees, which had already been granted at the September 21,

---

[6] The OSH also directed and compelled Defendant Annette Durand to show cause as to "why a default judgment should not be entered . . . due to her failure to answer or otherwise move in regard to the complaint . . . ." (OSH, Appellee's Exh. L, at 2.)

5

2007 OTSC Hearing. The Trustee's submission itemized costs and legal fees in the total amount of $11,802.35. A judgment in the amount of $2,485.85 was issued by the Bankruptcy Court against Appellant for such costs and attorney's fees on October 5, 2007 ("Judgment II"). No explanation was provided in the Judgment as to how that amount was reached. Judgment II was served on both the Appellant and Debtor, and an Affidavit of Service was filed with the Bankruptcy Court.

On October 9, 2007, Appellant filed a "Positive Response for Deposition," where he listed proposed terms and conditions for taking his deposition.

On October 18, 2007, the case was closed by the Bankruptcy Court.

### C. The Reconsideration Motion

On October 24, 2007, Appellant filed a Motion to Reconsider. On October 26, 2007, the Bankruptcy Court issued the Reconsideration Order scheduling a hearing on the Motion for Reconsideration. Appellee filed opposition papers with the Bankruptcy Court on October 24, 2007. Appellee also served these opposition papers on Appellant by mail and personal service through Alert Process Service Agency on October 30, 2007.

The Court held a hearing on the Motion for Reconsideration on October 31, 2007. Appellant appeared at the hearing and made a number of arguments as to why the sanctions against him were unwarranted and urged the Bankruptcy Court to reconsider. On November 2, 2007, the Bankruptcy Court issued a Decision and Order denying Appellant's Motion to Reconsider.

Appellant now appeals to the Court from the Judgments and the Reconsideration Order.

### II. STANDARD OF REVIEW

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See In re Hyman*, No. 05-7026-BK, 2007 WL 2492789, at *3 (2d Cir. Sept. 6, 2007); *see also Labow Mach. Co. v. Bayshore Wire Prods. (In re Bayshore Wire Prods.)*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law *de novo*, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion."); *accord In re Ionosphere Clubs,* 922 F.2d 984, 988-89 (2d Cir. 1990). A court's imposition of sanctions under Fed. R. Civ. P. 37 is reviewed for abuse of discretion. *See Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990); *see also In re Casse,* 198 F.3d 327, 341 (2d Cir. 1999) (holding that, because the bankruptcy court is "able to view firsthand the actions and statements of the parties, [and] . . . to view the conduct of those parties over an extended period of time, the reviewing court will not substitute its judgment for that of the bankruptcy court in the absence of a finding of abuse of discretion") (internal quotation marks and brackets omitted); *Charell v. Nichols,* No. 97 CIV. 552 (LAP), 1999 WL 253642, at *2 (S.D.N.Y. Apr. 29, 2007) ("[D]istrict courts apply an abuse of discretion standard when the issue involves the bankruptcy court's discretionary control over the management of its own docket, and [i]n such circumstances the scope of review is extremely narrow.") (quotations and citations omitted); *accord S.N. Phelps & Co. v. Circle K Corp.,* No. 96 Civ. 5801 (JFK), 1997 WL 31197, at *8 (S.D.N.Y. Jan. 28, 1997).

Moreover, "the factual findings upon which sanctions are based will not be disturbed unless they are shown to be clearly erroneous." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (internal quotations omitted).

### III. RULE 37 SANCTIONS

Federal Rule of Civil Procedure 37 provides that a court may impose sanctions "as are just" on a party that abuses the discovery process, such as failing to comply with a court order, Fed. R. Civ. P. 37(b), or failing to attend his own deposition, Fed. R. Civ. P. 37(d). For instance, the court may issue an order "striking pleadings in whole or in part," "dismissing the action or proceeding in whole or in part," or "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A). These sanctions are made applicable in bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7037. Fed. R. Bankr. P. 7037 ("Rule 37 F. R. Civ. P. applies in adversary proceedings.").

Sanctions under Rule 37 serve three purposes:

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). Courts possess "wide discretion" in imposing Rule 37 sanctions. *Daval Steel Prods.*, 951 F.2d at 1365. However, the Second Circuit has imposed two limitations upon a district court's discretion in imposing sanctions: (1) "the sanctions must be 'just[,]'" and (2) "the sanction must relate to the particular claim to which the discovery order was addressed." *Id.* at 1366 (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982)).

Moreover, the Second Circuit has emphasized that "[s]trong sanctions should be imposed only for severe violations of discovery orders," and that "[s]evere sanctions are justified . . . when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Daval Steel Prods.*, 951 F.2d at 1365, 1367 (stating that "severe sanctions are appropriate" when a party has sought to frustrate the discovery process by withholding essential facts); *see also Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986) ("The sanction of dismissal should not be imposed under Rule 37 unless the failure to comply with a pretrial production order is due to 'willfulness, bad faith, or any fault' of the deponent.") (quoting *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212 (1958)). However, lesser sanctions do not necessarily require a finding of bad faith or willfulness. *See, e.g., In re Fernandez*, Bankr. No. 06-20296, 2008 WL 268975, at \*5 (Bankr. D. Conn. Jan. 29, 2008) ("Willfulness is not a precondition for the imposition of Rule 37 sanctions, but may be a consideration in a court's exercise of its discretion to enter judgment against the offending party, widely considered the harshest of sanctions."); *Fleming v.*

7

*Deaconess Hospital,* No. 02-CV-934C (SC), 2004 WL 2011474, at *2 n.1 (W.D.N.Y. Sept. 9, 2004) ("A finding of willfulness is not necessary to impose sanctions under Rule 37; willfulness is relevant only to the extent of the selection of the sanction, if any, to be imposed.") (citing *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 n.8 (2d Cir. 1979)).

In exercising its discretion, the court should consider a number of factors, including the following: "[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . and [5] whether the judge has adequately assessed the efficacy of lesser sanctions."[7] *Jackson v. City of New York*, 22 F.3d 71, 74 (2d Cir. 1994) (alterations in original) *accord Ferran v. Office of District Attorney of County of Rensselaer*, No. 05-2978-cv, 2008 U.S. App. LEXIS 840, at *3 (2d Cir. Jan. 15, 2008).

In deciding whether to impose sanctions, courts "consider the violation at issue in the context of that party's behavior throughout the entire case." *Balaber-Strauss v. Tartaglione (In re Tartaglione)*, No. 06 Civ. 13560 (WCC), 2008 WL 336844, at *3 (S.D.N.Y. Feb. 5, 2008) (citing *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 388 (2d Cir. 1981) ("[I]t would be excessively formalistic to view the defiance of the order in isolation rather than against the background of [plaintiff's] prolonged and vexatious obstruction of discovery."); *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("[S]anctions must be weighed in light of the full record in the case.")).

Parties, especially *pro se* litigants, must have prior notice that violation would result in dismissal with prejudice. *See Simmons v. Abruzzo*, 49 F.3d 83, 88 (2d Cir. 1995) (finding sanction of dismissal with prejudice for discovery violations to be improper because it was without prior notice) (citing *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir. 1995), *rev'd on rehearing on ground that notice had in fact been given*, *id.* at 765 (2d Cir.1990), *cert. denied*, 499 U.S. 943 (1991)).

---

[7] Although these factors are utilized for dismissals under Rule 41 of the Federal Rules of Civil Procedure, they are also instructive in the Rule 37 framework. *See, e.g., Nieves v. City of New York,* 208 F.R.D. 531, 535 (S.D.N.Y. 2002) ("The Rule 37 factors are similar to the factors a court considers when determining whether involuntary dismissal is warranted under Federal Rule of Civil Procedure 41(b).") (citing *Martin v. Metropolitan Museum of Art*, 158 F.R.D. 289, 292 (S.D.N.Y. 1994)).

## IV. DISCUSSION[8]

Dismissal is a severe remedy reserved for the most severe behavior. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) ("The sanction of dismissal 'is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'") (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (internal citations and quotation marks omitted)).

As set forth below, although the Bankruptcy Court is afforded broad discretion in determining whether Rule 37 sanctions are warranted, the Bankruptcy Court's findings in the instant case are insufficient to support the drastic sanction of striking the answer and entering a default against Appellant. The Bankruptcy Court did not explicitly analyze any of the relevant factors that the Second Circuit has set forth for determining whether sanctions, including the drastic sanction of striking an answer and entering a default, are warranted. In particular, the Bankruptcy Court, among other things, did not address Appellant's arguments that he was operating in good faith, did not consider the duration of the non-compliance or whether there was prejudice to the Trustee from the non-compliance, and did not consider whether there were less drastic sanctions available other than striking the answer and entering a default.[9]

As a threshold matter, this is not a situation where Appellant failed to appear at

---

[8] As a threshold matter, Appellee argues that the Court should dismiss the appeal because Appellant did not comply with Fed. R. Bankr. P. 8006 by failing to submit a complete designation of the record as part of his appeal. Despite Appellant's purported violation of Rule 8006, the Court declines to impose the drastic remedy of dismissal of appeal, especially because of Appellant's *pro se* status. *See Harris v. Swimelar (In re Harris),* 464 F.3d 263, 269 (2d Cir. 2006) ("We hold that the district court abused its discretion under Rule 8001 when it dismissed debtor's case for failure to include the June 23 transcript in the designation of record without first giving debtor notice and opportunity to respond and without determining whether a lesser sanction would have been appropriate.") There is no indication that Appellant's failure to designate certain documents in the record was not an effort to mislead the Court, but rather appears to be a product of his unfamiliarity with the appeal process. In fact, Appellant did designate a number of the critical documents from the record with his appellate papers. Moreover, the Court now has all of the pertinent documents from the record before it and Appellee has suffered no prejudice from any procedural violation. Therefore, the Court will address the appeal on the merits. Similarly, to the extent Appellant argues that the Bankruptcy Court should not have considered Trustee's papers because they were not timely served, the Court rejects that argument because it is not supported by the record.

[9] As discussed *infra*, although the sanction of awarding of costs and attorney's fees is a far less drastic remedy than the striking of the answer and entering of a default judgment, the Bankruptcy Court also failed to consider the Rule 37 factors, discussed *infra*, in connection with that sanction. Moreover, because the awarding of costs and attorney's fees was done in conjunction with the sanction of striking the answer and entering the default, the Court views these sanctions as intertwined and the Bankruptcy Court's analysis of the Rule 37 factors in the context of the default sanction on remand also could impact its view as to the costs/fees sanction. Therefore, the Court also vacates Judgment II against G. Durand granting attorney's fees and costs in the amount of $2,485.85, and remands to the Bankruptcy Court for consideration and analysis of the relevant factors.

9

all in connection with the adversary proceeding. Appellant filed an answer, submitted written objections to Trustee's Notice of Deposition, submitted a written response to the Order to Show Cause issued by the Bankruptcy Court on Trustee's default/sanctions motion, and filed a motion for reconsideration after the Bankruptcy Court granted Trustee's motion.

The Bankruptcy Court's conclusion that the drastic remedy of default was warranted is reflected in the following analysis at the Order to Show Cause hearing on Trustee's motion:

> Well, I have reviewed the papers, and although I agree that he is a pro se, he just can't totally ignore his responsibilities and just get on his high horse and just say that we're violating his Constitutional and civil rights, and he argues usurping the Court's power by setting dates and times. Most of these dates and times are either set by the Rules or have been set by the Court, and based on Mr. Durand's conduct, I think that an appropriate sanction is to strike his answer, order him to pay the costs of bringing of this motion, and grant judgment against him, and I will so order and request that you e-mail in an order, and also I will default Annette Durand for failure to respond to the complaint.

(September 21, 2007 Transcript, at 5.) After Appellant filed his motion for reconsideration under Rule 60, the Bankruptcy Court denied the motion based upon the following analysis:

> As set forth in the Trustee's Opposition, Durand has shown a blatant disregard for the applicable discovery rules ultimately leading to the entry of a default judgment and the imposition of sanctions. For example, Durand apparently believes that he had discretion to dictate the time, place, duration and format of his deposition. Durand also apparently believes that his attendance was not mandatory despite being served with a subpoena demanding his attendance. Durand did not even express these so called issues with the discovery process until after the Trustee had sought the scheduling of a hearing on his motion for a default judgment and for sanctions against Durand.
>
> After Durand failed to attend a properly noticed deposition at the Trustee's office, the Trustee's counsel then took it upon themselves, despite not being required to do so, to contact Durand to reschedule a deposition. Exhibit "A" to the Opposition is a letter sent by Trustee's counsel to Durand requesting that he contact the Trustee to reschedule his deposition. The letter further advised Durand of the potential risk of failing to appear at a rescheduled deposition. Durand never

contacted the Trustee to arrange for a rescheduled deposition. Thus, Durand, at his own peril, failed to act and demonstrated a complete disregard for the seriousness of these proceedings. Unfortunately, this was Durand's posture throughout these proceedings as he also failed to appear at the pretrial conference held on May 9, 2007, in this adversary proceeding.

(November 2, 2007 Decision and Order, at 2-3.)

First, although the Bankruptcy Court's analysis suggests that Appellant's conduct was willful, the Bankruptcy Court did not address the various arguments Appellant made to support his contention that he was operating in good faith. For example, Appellant made clear that, although he did not appear at the deposition, he believed that he was permitted to object to the terms and conditions of the deposition notice, including the time and place of such deposition. *See* Opposition to Order to Show Cause ("Imposing on me a time, date, place, the format and the procedure, an undetermined number of people, professionals and creditors who may attend and ask questions of me, and a strict exclusion of anyone on my part, as pro se, to attend, no options whatsoever, as stated in plaintiff's so-called notice of deposition is a serious violation and infringement on my civil rights."); *see also* Appellant's Positive Response for Deposition, dated October 5, 2007 (seeking to impose certain restrictions on the deposition procedure).[10] In short, Appellant argues that he believed that he had the right to object to the Trustee's Deposition Notice and that he did not have to appear unless ordered to do so by the Court. In addition, at the motion for reconsideration, Appellant appeared to be trying to explain to the Bankruptcy Court that he was under the mistaken impression (based upon state court procedure) that, if he responded in writing to any motions and/or requests, he did not have to appear in court as well:

> Mr. Durand: Yes. The plaintiff just say I act in bad faith, and that's not true at all. I am not an attorney. I am pro se representing myself, and I had followed the procedure of the Supreme Court of the State of New York, and every time

---

[10] In his appellate papers to this Court, Appellant contends he sought certain limitations on his deposition because of his medical condition: "Duration of the suggested deposition was limited to 60 minutes because: Appellant is suffering with a sever [sic] form of diabetic. The sickness has forced Appellant to be hospitalized from December 13, 2005 to December 21, 2005 at South Nassau Community Hospital. The sickness had forced Appellant to be hospitalized again from July 27, 2006 to September 5, 2006 at the South Nassau Community Hospital again. Under those condition, there is no medical doctor with good conscience who would advise a patient to be submitted to the Appellee's imposing form of questioning by an unlimited number of people including Appellee, all his professionals, and creditors, for an unlimited time. However, against the advise of any medical doctor with good conscience, Appellant was willing to submitted himself to this intense questioning by Appellee and all his professionals, and all the creditors, for on hour without any medical doctor's supervision." (Appellant's Brief, at 12-13.)

11

there's a paper sent to me I always reply. The plaintiff cannot prove here there is no question asked and there's no response for me. I'll always respond. So the good faith is there. On one occasion I had asked the Court is that the Court procedure in my paper that for plaintiff to ask me I must respond to his complaint, and at the same time I must come to the hearing too. Normally in Supreme Court, as I observe, as long as you respond that's like you – you say any difference of you answer to whatever question raised in the Court, and I did that. I am here today because the Court ordered me to be here. If this was the case, I would be here. That's what I had on my motion, asked the Court if the plaintiff has a privilege in the Court which I don't have or if the plaintiff is above the law to set the rule and procedure of everything that's supposed to take place in the Court, and this is one of the ground of my motion. I have some right which was not respected by the imposition of the deposition on me with the format that was contrary to fairness.

(October 31, 2007 Transcript, at 6-7.)[11] The Bankruptcy Court never addressed any of these arguments made by Appellant to support his contention that his non-compliance with the Notice of Deposition, as well as his failure to appear at the Order to Show Cause hearing (although he filed a written response), were not done willfully or in bad faith.[12] Given the Bankruptcy Court's failure to address any of Appellant's arguments about his purported good faith, combined with the failure to consider the other factors discussed below, remand is warranted.

Second, the Bankruptcy Court did not consider the duration of the non-compliance – namely, less than three months – and whether there was any prejudice to Trustee from the delay. In particular, Trustee did not even argue that the delay had caused any prejudice in connection with Trustee's rights in the adversary proceeding. Unlike the instant case, the sanction of dismissal or default is generally found to be warranted when there are repeated violations of the discovery process by the litigant over a significant

---

[11] In fact, in his written opposition to the initial Order to Show Cause, Appellant also objected to the submission by Trustee of an Order that required him to both respond in writing and appear in person to oppose the sanctions motion. (Appellant's Ex. C.) Appellant reiterated to this Court in his appellate papers that "Appellant and the Debtor are pro se, self representative who do not have a complete knowledge of all federal and state courts procedures." (Appellant's Brief, at 13.) Appellant also complained that he was harassed at his home when being served with Appellee's papers. (*Id.* at 8-9.)

[12] The Bankruptcy Court also erroneously stated in its ruling that Appellant failed to comply with *a subpoena* to attend a deposition. *See* November 2, 2007 Decision and Order, at 2 ("Durand also apparently believes that his attendance was not mandatory despite being served with a subpoena demanding his attendance."). In fact, it was not a subpoena, but a Notice of Deposition from the Trustee, to which Appellant later objected. No subpoena was ever issued, nor did the court ever order the Appellant to appear at the deposition or face sanctions.

period of time after being warned about the consequences of non-compliance. *See, e.g., In re Tartaglione*, No. 06 Civ. 13560 (WCC), 2008 WL 336844, at *7 (S.D.N.Y. Feb. 5, 2008) (striking appellants' answer and default where "throughout his entire bankruptcy process . . . the Debtor repeatedly failed to produce critical documents or respond to proper document requests and interrogatories, and there was reason to doubt his credibility and forthrightness"); *Graf v. Long Island Railroad Co.,* No. 04 CV 4945 (NG) (RER), 2006 WL 2620525, at *3 (E.D.N.Y. Sept. 13, 2006) (holding dismissal warranted where plaintiff was warned multiple times by court that failure to attend the independent medical examination could result in dismissal); *Jeanette Coquette Co. v. Hartford Fire Ins. Co.*, No. 93 CIV 4417 (DAB), 1997 WL 527874, at *2 (S.D.N.Y. Aug. 22, 1997) (dismissing case where plaintiff failed to appear for his deposition after three lengthy adjournments and failed to provide defendant or court with any explanation for such failure to attend); *see also Di Nardo v. Briguglio*, No. 05 Civ. 5568 (RCC)(HBP), 2007 WL 582809, at *5-*6 (S.D.N.Y. Feb. 23, 2007) (finding monetary sanction, rather than default judgment, was warranted where plaintiff had to obtain four court orders before defendant appeared for deposition, but no prejudice was shown and, thus, "case-dispositive sanction would be excessive") (report and recommendation).

Third, and perhaps most importantly, the Bankruptcy Court did not consider whether a lesser sanction was available. For example, before striking the answer and entering the default, the Bankruptcy Court never rejected Appellant's objections regarding the conditions of the deposition, nor did the Bankruptcy Court ever order him to appear at the deposition or risk entry of the default. Similarly, the Bankruptcy Court apparently did not consider whether monetary sanctions and an order compelling his attendance at a deposition would have been sufficient to prompt compliance. Without clear consideration of the availability of these lesser sanctions (especially given the absence of any obvious reason in the record why lesser sanctions would have been futile in this case), remand is necessary for such consideration. As Judge Leisure noted in a similar circumstance,

> Finally, the Court must consider whether Judge Blackshear assessed the efficacy of lesser sanctions. His opinion mentions only that efficacy of lesser sanctions should be considered, but does not expressly consider them. Because dismissal pursuant to Rule 41(b) is so harsh a sanction, . . . Judge Blackshear should have considered the efficacy of lesser sanctions before dismissing the action. . . . Therefore, this Court now orders that the case be remanded to Judge Blackshear pursuant to Bankruptcy Rule 8013 for further consideration of whether some lesser sanctions might be appropriate.

*In re United Merchants and Mfrs., Inc.*, 86 B.R. 764, 767-68 (S.D.N.Y. 1988); *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 139 (2d Cir. 2007) (remanding case so, among other things, district court could consider "the efficacy of lesser sanctions"); *Jones v. Thompson,* 996 F.2d 261, 265 (10th Cir. 1993) ("[D]ismissal is a

severe sanction and is not ordinarily warranted if lesser sanctions would be effective."); *Webb v. District of Columbia,* 146 F.3d 964, 976 (D.C. Cir. 1998) ("At this point, then, we are not persuaded that a default judgment was the only punitive option available to the district court . . . . [W]e vacate the judgment and remand to the district court for further consideration of less onerous sanctions."); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 516 (5th Cir. 1985) ("[T[here is . . . an absence in the record of any consideration by the district court of whether a less drastic sanction would have equally furthered the important deterrent aspect of Rule 37. Without explicit findings on this critical element, it is difficult to determine whether the court was within its discretion by choosing the ultimate sanction of dismissal. We do not enumerate or suggest other alternatives, but simply note that as far as the record demonstrates, no sanctions less than dismissal were even considered.") (footnote omitted); *Boudwin v. Graystone Ins. Co. Ltd.*, 756 F.2d 399, 400 (5th Cir. 1985) (remanding case back to the district court and noting that "consideration [of lesser sanctions] and the court's finding that lesser sanctions would be inadequate, must be spread upon the record. . . ."). The need to specifically address this factor is especially important when the litigant is *pro se* and may be unfamiliar with court procedures or the sanctions for noncompliance. *See, e.g., Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 n.3 (10th Cir. 1992) ("Particularly in cases in which a party appears pro se, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right to access to the courts because of a technical violation.") (citing *Mitchell v. Inman,* 682 F.2d 886, 887 (11th Cir. 1982) (*per curiam*)).

In sum, although examined by this Court under an abuse of discretion standard, the Bankruptcy Court's failure to consider the above-referenced relevant factors precludes this Court from determining whether the harsh remedy of default was warranted.[13] *See Mobley v. McCormick,* 40 F.3d 337, 341 (10th Cir. 1994) ("Unfortunately, the record on appeal contains no indication the trial court considered these criteria. The short, three-paragraph order merely recites Mr. Mobley failed to comply with the conditions contained in the order dismissing the original suit and concluded this case should be dismissed. . . . The trial court's failure to evaluate and weigh these relevant factors prohibits this court from engaging in any meaningful review of the trial court's decision. Accordingly, we must hold this failure amounts to an abuse of discretion."); *AHP Subsidiary Holding Co. v. Stuart Hale Co.,* 1 F.3d 611, 620 (7th Cir. 1993) ("Here, the district court's explanation is so conclusory that we cannot review the substance of its decision. Accordingly, its judgment shall be vacated and, on remand, the parties may again address the matter and obtain a more plenary explanation from the district court."); *see also Webb,* 146 F.3d at 976 n.23 ("[W]e are confident that further exploration of the [availability of a lesser sanction] issue will either reveal the availability of alternative sanctions or result in a more complete explanation of why such sanctions were deemed to be inappropriate."). Therefore, the Court will remand the case to

---

[13] The Court notes that the denial of the Appellant's motion for reconsideration did not rectify this problem. In particular, in denying the motion, the Bankruptcy Court summarized Appellant's conduct, but did not analyze the various Rule 37 factors discussed *supra* and, thus, did not provide a sufficient basis for the its initial decision to impose sanctions or its denial of the motion for reconsideration.

14

the Bankruptcy Court for explicit consideration of the Rule 37 factors and "a determination as to whether it will persist in its decision to impose sanctions at all, and only if so for a determination of what those reconsidered sanctions should be." *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 177 (2d Cir. 1999); *see also Design Strategy Inc. v. Davis,* 469 F.3d 284, 298 (2d Cir. 2006) ("In prior cases in which a district court erroneously imposed a sanction against a party, this Court has indicated a preference for remanding the case to the district court to reconsider whether to sanction, and, if so, the appropriate sanction.").

Finally, with respect to the Bankruptcy Court's decision to also award costs and attorneys' fees in the amount of $2,485.85 because of Appellant's conduct, this Court recognizes that "[m]onetary sanctions that reimburse a party for expenses caused by the failure to cooperate with discovery requests are the mildest form of sanction that can be imposed." *Fleming v. Deaconess Hospital,* No. 02-CV-934C (SC), 2004 WL 2011474, at *2 (W.D.N.Y. Sept. 9, 2004). Moreover, a finding of wilfulness or bad faith is not necessary to impose such a sanction. However, although the Court does not conclude that the Bankruptcy Court lacked discretion to award such costs/fees in this case, the Court concludes that remand on this sanction is also warranted because the Bankruptcy Court also did not consider the Rule 37 factors as it related to this sanction and this sanction was intertwined with the harsher sanction of default. For example, there is no explanation as to why, even in light of the drastic sanction of default, the Bankruptcy Court believed this additional monetary sanction also was warranted. Under these circumstances, the Court concludes that it is appropriate to reverse all sanctions and remand so that the Bankruptcy Court can consider which, if any, sanctions are warranted after considering the Rule 37 factors as a whole based upon the record before it.[14]

In remanding this case, this Court emphasizes that it is not condoning the manner in which the Appellant has conducted himself in the adversary proceeding. Moreover, if the Bankruptcy Court determines on remand after clear consideration of the above-referenced factors that some lesser sanction than default (or no sanction) is appropriate and vacates the default, Appellant is certainly on notice of his need to comply with his discovery obligations and court orders regarding his deposition or other court proceedings, as well as the consequences if he fails to comply. As the Second Circuit has noted, a "party who flouts such orders does so at his peril." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir. 1989), and Appellant certainly understands at this juncture that any future violation of Bankruptcy Court orders or his discovery

---

[14] In addition, if the Bankruptcy Court determines that sanctions in the form of costs/attorney's fees are warranted after explicitly considering the Rule 37 factors, the Court also needs to explain how it arrived at the amount contained in Judgment II. In particular, although Trustee sought over $11,000 in such costs/fees, the Bankruptcy Court granted costs/fees in the amount of $2,485.85 without any explanation for how such amount was reached. Nor is it apparent from the materials submitted to the Bankruptcy Court by the Trustee how that amount was calculated. Therefore, if the Bankruptcy Court finds such costs/attorney's fees are warranted on remand, the basis for that calculation must also be provided.

obligations will not be tolerated.[15]

### IV. CONCLUSION

For the foregoing reasons, after careful consideration of the record, the Court vacates the Bankruptcy Court's judgments imposing sanctions against G. Durand and remands the case for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 16, 2008
Central Islip, New York

\* \* \*

The Appellant-Debtor is proceeding *pro se.* The attorneys for the Appellee-Trustee are Neil H. Ackerman, Esq., and Katherine A. Geraci, Esq., of Meltzer, Lippe, Goldstein & Breitstone, LLP, 190 Willis Avenue, Mineola, New York 11501.

---

[15] Appellant also argues that the Bankruptcy Court abused its discretion in granting the default motion against Annette Durand, who never appeared or filed an answer. The Bankruptcy Court properly found that Appellant has no basis to assert standing over any claims by Annette Durand. Accordingly, any such argument by Appellant is meritless and the Default Judgment against Annette Durand is unaffected by this Memorandum and Order.